UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:11-CR-35-TLS |
| | ) | |
| BOOKER SEWELL | ) | |

## OPINION AND ORDER

The Defendant, Booker Sewell, was convicted by a jury for being a felon in possession of a firearm and for maintaining a place for the purpose of distributing cocaine and marijuana. An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of the Defendant's sentencing. The Defendant objects to certain portions of the PSR, arguing that (1) the jury failed to find beyond a reasonable doubt that the Defendant possessed a firearm in connection with either a crime of violence or a controlled substance offense; (2) there was no evidence to establish that the Defendant possessed a firearm in connection with a controlled substance offense; (3) there was insufficient evidence regarding a drug quantity of at least 15 but less than 50 kilograms of cocaine; and (4) the Defendant deserves a variance from the sentencing guideline range. The Court conducted an evidentiary hearing [ECF No. 94] and the parties submitted argument through written briefs [ECF Nos. 89, 90, and 93]. The objections are ripe for ruling.

## FINDINGS OF FACT

"At sentencing, a district court need only make findings of fact, such as the quantity of drugs attributable to a defendant, by a preponderance of the evidence." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012) (citing *United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir.

2008)); *see also United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009) (stating the facts relevant to sentencing should be proved by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *Davis*, 682 F.3d at 612. The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (quotation marks omitted). *See also United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011) ("At sentencing, courts may rely on presentence reports containing even double-hearsay, i.e., statements by coconspirators to investigators, so long as those statements are reliable."). "When seeking to approximate the quantity of drugs involved by way of reliable evidence, a district judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008) (quoting *United States v. Johnson*, 489 F.3d 794, 796–97 (7th Cir. 2008)). "Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'" *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (quoting *England*, 555 F.3d at 622). "A district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.*

Here, the statements of cooperating co-conspirators, the recordings of intercepted communications, and the nature of seized contraband establish internal corroboration that lends a

sufficient indicia of reliability to the evidence presented in the PSR and at the evidentiary hearing. The Defendant does not offer countervailing evidence that calls the reliability or correctness of the facts into question. Having fully considered the information from the various sources that provide a sufficient indicia of reliability to support the information's probably accuracy, the Court finds the facts set forth below to have been established by a preponderance of the evidence.

The investigation that led to the indictment of the Defendant began with controlled buys of powder cocaine and crack cocaine. Through these controlled buys and court authorized wiretaps, law enforcement agents identified Silvestre Castaneda (Silvestre) as a significant cocaine supplier in the Fort Wayne area. Court-ordered wiretaps were then obtained for telephones used primarily by Silvestre, and these intercepted conversations revealed that Silvestre was obtaining kilograms of cocaine from southern California using commercial shipping companies. Silvestre was being assisted by his sister, Maritza Castaneda (Maritza), and her boyfriend, Alejandro Montoya (Montoya), who lived together in California. Maritza and Montoya, with help from Silvestre, were obtaining the cocaine and sealing it inside large metal soup cans, and shipping these packages to Fort Wayne addresses under the control of Osiris Espinoza or Florencio DeLuna (DeLuna). Silvestre then further distributed the cocaine upon its arrival in Fort Wayne. Customers of Silvestre included three brothers in Fort Wayne, identified as the Defendant; his brothers, Antonio Sewell and Jermorris Sewell; and a dealer in Ohio, James Thomas (Thomas). Pedro Castaneda (Pedro), a half-brother to Silvestre and Maritza, would aid Silvestre in collecting money from the Sewell brothers and by licensing vehicles in his name for Silvestre's use. The proceeds of the cocaine sales were then either transported by courier or shipped in packages through commercial shipping companies from Fort Wayne to

southern California. Montoya and Maritza would then transport the money to Mexico. The supplier and overall head of this distribution organization was an individual in Mexico called the "Pariente," who was identified as Hector Castaneda (Hector).

The wiretaps during the Castaneda investigation revealed conversations, often heavily coded and cryptic, between the Defendant and Castaneda about arrangements for drug transactions. These conversations led to a federal search warrant issued for the residence of the Defendant and his wife, Martine Sewell, which was executed on April 13, 2011. The Defendant was located at the top of the stairs in the upstairs hallway and Martine was located in the upstairs master bedroom. An officer asked Martine if there were any weapons in the bedroom; she replied no. The officer then asked the Defendant if there were any weapons in the bedroom; he replied "There's a gun that she don't know about. It's under the bed." The officer then located a silver handgun under the left side of the bed, with the left side of the bed having male clothing and a male urinal hanging from it.

During the search of the Defendant's residence, in addition to the handgun, officers found the following items of evidence: multiple containers and bags of marijuana; drug ledger sheets; multiple cellular telephones; $21,917.00 cash is a safe in the dishwasher and in a jeans pocket ($19,900.00 in the safe and $2,017.00 in the jeans); two digital scales above the refrigerator, packaging consistent with at least a kilogram of cocaine with residue testing positive for cocaine, found in the kitchen cabinet above the refrigerator; a metal can under the sink; a measuring cup with cocaine residue; several bottles of white powder (one containing lidocaine and one containing Inositol, both of which are common cutting agents for cocaine), and; telephone bills. The metal can was similar to the type used to package kilogram quantities of cocaine by Castaneda's group. The apparent drug ledgers included multiple names and numbers consistent

with drug distribution, and a notebook contained a list of common cocaine cutting agents, some of which were followed by the notation "cut coke." Both telephones used by the Defendant over the Castaneda wiretaps were found in the Defendant's residence and the most recently used phone was found in the Defendant's jeans, along with the $2,017.00 cash.

After his arrest, the Defendant was provided with his Miranda rights and was formally interviewed. He admitted purchasing two or three pounds of "carpet," or marijuana, from unknown Hispanic males. He was evasive about his telephone number, but gave a purported contact number very close to one of the numbers used by him during the Castaneda interceptions.

In Castaneda's proffer interview on March 20, 2013, he estimated selling 30 to 40 kilograms of cocaine to the Defendant between 2008 and his arrest in April 2011. The unit price ranged from $25,000 per kilogram in 2008 to $30,500 per kilogram in 2011. The largest single transaction Castaneda made with the Defendant was 3 kilograms, which he estimated occurred about a year prior to his arrest in April 2011. Castaneda's last transaction with the Defendant, about a month before his arrest, consisted of 2 kilograms of cocaine.

**ANALYSIS**

**A.     Apprendi**

The Defendant argues that applying the Chapter 4 enhancement under U.S.S.G. §4B1.4(b)(3)(A) makes him an armed career criminal pursuant to U.S.S.G. §4B1.4 and increases his sentence above the statutory maximum in violation of the Due Process Clause of the Fifth Amendment. *See Apprendi v. New Jersey*, 520 U.S. 466 (2000). "After *Apprendi*, any fact that

increases the statutory maximum sentence must be proven to a jury beyond a reasonable doubt or be admitted by the defendant." *United States v. Gilmer*, 534 F.3d 696, 704 (7th Cir. 2008). A judge may impose a sentence below the statutory maximum based on facts found by a preponderance of the evidence, and "*Apprendi* has no application to cases where the sentence is below the statutory maximum." *Id.*; *see also United States v. Roberts*, 534 F.3d 560, 573 (7th Cir. 2008) ("[W]e have repeatedly held that when a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, *Apprendi* is beside the point." (citations omitted)).

In making his argument, the Defendant admits that his argument requires that the Court consider 18 U.S.C. § 922(g) and the non-enhancement statutory sentence of 18 U.S.C. § 924(a)(2) (not more than 10 years) to be the foundational sentence that determines the statutory maximum, as opposed to the 18 U.S.C. § 924(e) statutory minimum of not less than 15 years for any person with three previous convictions for a violent felony or a serious drug offense. Thus, the Defendant believes an enhancement would cause the sentence to exceed the statutory maximum. The Defendant also tries to parse out the jury's decision, arguing that the instructions and verdict forms meet the requirements of conviction but not the requirements of the U.S.S.G. §4B1.4 enhancement. In particular, the Defendant argues that the jury could have reached a proper guilty verdict without having unanimously agreed that the Defendant was distributing cocaine out of his residence (a controlled substance offense); that some could have found him guilty based on marijuana use at the residence and not manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance.

The Government argues that the enhancement is proper and that *Apprendi* does not apply

because the Defendant is an armed career criminal with a statutory maximum sentence of life imprisonment. The Government further argues that it presented significant evidence at trial that the Defendant used his residence to distribute or possess with the intent to distribute large quantities of cocaine. Furthermore, the Government argues that the jury in fact concluded in forfeiture proceedings that the gun and cash were used or intended to be used to commit or to facilitate the commission of a drug offense.

The Court finds that the Defendant's arguments are without merit. First, *Apprendi* is inapplicable to this case because the enhancement to the sentence does not exceed the statutory maximum, which is life imprisonment. *United States v. Thomas*, 280 F.3d 1149, 1160 (7th Cir. 2002) ("[B]ecause [the defendant] was correctly found to be an armed career criminal, the maximum sentence he faces was life imprisonment."); *United States v Skidmore*, 254 F.3d 635, 641–42 (7th Cir. 2001) ("[B]ecause [the defendant] had been convicted of three separate violent felonies, . . . the maximum sentence [he] faced was life imprisonment."); *Roberts*, 534 F.3d at 573 (*Apprendi* does not apply when a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted.). Thus, preponderance of the evidence is the correct standard to apply for sentencing purposes.

Second, significant evidence presented at trial establishes that the Defendant was using his residence to traffick large quantities of cocaine. Silvrestre testified that he made several deliveries of cocaine to the Defendant's residence. Large sums of cash, a drug ledger, scales, packaging with drug residue, cocaine cutting agents, and a metal can similar to the type Silvestre used to transport his cocaine were found in the Defendant's home. The Defendant's involvement in cocaine trafficking was further corroborated by the wiretapped phone calls between Silvestre

and the Defendant, with the phones used in those calls found in the Defendant's residence. Taken altogether, the Court finds that the preponderance of the evidence clearly establishes that the Defendant was engaged in cocaine trafficking from his home, making the enhancement under U.S.S.G. §4B1.4 proper. Therefore, the Defendant's objection is overruled.

**B.**     **Firearm**

The Defendant argues that an enhancement under U.S.S.G. §4B1.4(b)(3)(A) is inappropriate because there is no evidence connecting the firearm found under his bed with a controlled substance offense. U.S.S.G. §4B1.4(b)(3)(A) provides for an enhanced base offense level of 34 "if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence . . . or a controlled substance offense." The Defendant argues that there was no testimony linking the gun to the distribution or use of a controlled substance. The Defendant attempts to distinguish the gun from other evidence found in the home, noting that the marijuana, packaging with drug residue, scales, money, and cellular telephone were all found on the first floor of the residence, while the gun was recovered from underneath the bed in an upstairs bedroom. The Defendant asserts that the presence of the gun was not related to any drug use or distribution but rather was solely for personal protection. He does not dispute his possession of the gun but claims many Americans possess marijuana and firearms in their homes and that the firearm's presence is merely coincidental or accidental. He argues the gun did not facilitate or have the potential to facilitate a drug trafficking offense, and thus was not used or possessed "in connection with" a controlled substance offense.

The Government argues that there is significant evidence establishing that the gun was readily accessible as a means of protection, thereby facilitating the Defendant's ongoing drug distribution and means of financing that ongoing distribution, and that the Defendant intended to protect his drug investments with a gun.

A firearm is used or possessed "in connection with" a drug offense if it has some purpose or effect with respect to the drug trafficking crime. *United States v. Haynes*, 179 F.3d 1045, 1047 (7th Cir. 1999). The firearm's presence cannot be merely coincidental or accidental, but instead must facilitate or have the potential to facilitate the offense. *Id.* Possessing a gun in connection with illegal drug activity may be inferred by the accessibility and proximity of the gun. *Id.* (citing *United States v. Ewing*, 979 F.2d 1234, 1238 (7th. 1992) ("The seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation.")). "[A] gun which is possessed (but not held, pulled, brandished or fired) plausibly could advance the possession and future distribution of narcotics in a variety of ways." *United States v. Castillo*, 406 F.3d 806, 814–15 (7th Cir. 2005). "[W]eapons are recognized tools of the drug trade and . . . the possession of a gun can advance the possession and future distribution of narcotics by protecting the drugs or the drug dealer, by serving as a potent warning to those who might contemplate stealing the drugs and by serving as a tool to defend against those who actually undertake to steal the drugs." *United States v. Perez*, 581 F.3d 539, 547 (7th Cir. 2009).

The Defendant's argument that there is no proximity or accessibility between the gun (found in the upstairs bedroom) and the other drug evidence (found downstairs) is unpersuasive. The Defendant fails to explain how the distance between the two stories of the residence is great

enough to destroy any inference of the gun's possession for the purpose of protecting drug activity. A gun need not be in the same room to find that the gun was used or possessed in connection with drug activity. *See, e.g.*, *id.* (finding evidence was sufficient that gun was used in connection with drug activity when gun was located in a different room from the drugs but was located within the same home); *United States v. Bothun*, 424 F.3d 582, 586 (7th. Cir. 2005) (finding gun was presumptively connected to drug activity where gun was found in bedroom of home and drugs were found in other parts of the home).

The Defendant asserts that the lack of any testimony linking the gun to the Defendant's actions means there is no evidence establishing that the Defendant used or possessed the firearm in connection with a controlled substance offense. This assertions fails to appreciate that possessing a gun in connection with illegal drug activity may be inferred based upon the accessibility and proximity of the gun to illegal drug dealing, *see Haynes*, 179 F.3d at 1047, and does not require explicit testimony linking the gun to the Defendant's actions.

The Court finds that there is ample evidence from which it may infer based on its accessibility and proximity that the gun was used in connection with illegal drug activity. The evidence of drug activity found in the home includes the following: packaging materials with cocaine residue, a metal can similar to the type and size used by Castaneda to package and transport kilogram quantities of cocaine, 110 grams of marijuana, a digital scale, various cutting agents, a drug ledger, and nearly $22,000 cash, most of which was located in a safe in a dishwasher. Such large amounts of cash are indicative of drug dealing, and further testimony by Castaneda established that kilogram quantities of cocaine were delivered to the Defendant's home. The gun was found under the Defendant's side of the bed and was loaded. In this location

and condition the gun was readily accessible to the Defendant and capable of being fired instantaneously. That the gun was found in a different room of the home from other drug related evidence does not destroy its proximity. *See Perez*, 581 F.3d at 547; *Bothun*, 424 F.3d at 586. When the Defendant was arrested, he expressed his intention of using the gun to protect himself and his possessions, telling officers "If it wasn't you all running up in here, I would be using my gun for my protection, you know what I mean." The Defendant maintained his home as a place for the distribution of cocaine, and the gun "serv[ed] as a potent warning" to protect him and his drug activity from those who might try to steal the drugs or drug money located in the home. *See Perez*, 581 F.3d at 547.

Therefore, the Court finds by a preponderance of the evidence that the gun was used in connection with a drug offense based on its proximity and accessibility to drugs in the home, and its potential to facilitate the possession and future distribution of drugs as part of the Defendant's ongoing drug trafficking scheme. The Defendant's objection to the enhancement under U.S.S.G. §4B1.4(b)(3)(A) is overruled.

## C. Drug Quantity

Paragraph 36 of the PSR concludes that the Defendant is responsible for at least 15 KG but less than 50 KG of cocaine. Based on these amounts, the Defendant was assessed a base offense level of 34 for Count 2 pursuant to the Drug Quantity Table under U.S.S.G. §2D1.1(c)(3). The Defendant argues that there is insufficient evidence to conclude that he is responsible for at least 15 KG but less than 50 KG of cocaine. Instead, the Defendant argues that only those substances found in his residence at the time of the search should be attributed to him,

namely marijuana. In the alternative, the Defendant argues that "at the very most" he should be given a base offense level of 32 based on a drug quantity of at least 5 KG but less than 15 KG of cocaine, arguing that the testimony of the Government's witness, Silvestre Castaneda, whose testimony helped establish the drug quantity attributable to the Defendant, lacks sufficient credibility to meet the preponderance of the evidence standard. (Def. Sentencing Br. at 7.) The Government argues that Silvestre's statements are heavily corroborated by other evidence and that his overall drug quantity estimate should be credited as a reasonable estimate.

The Defendant attempts to undermine Castaneda's credibility and limit the number of cocaine deals between the Defendant and Castaneda by highlighting inconsistencies between the testimony and other evidence. Castaneda told a detective that he provided the Defendant with an estimated 30 to 40 KG of cocaine from 2008 to 2011. The Defendant argues that, because the Defendant was imprisoned from January 2008 to September 2009, the Court should question the accuracy of Castaneda's statements, even though the Defendant admits the drug transactions could have occurred after the Defendant's release on parole and before his detainment for the instant offense. The Defendant also uses the testimony of Detective Adalberto Martinez from the sentencing evidentiary hearing to argue that there were 8 drug transactions between the Defendant and Castaneda, that the largest transaction was for 3 KG, and that, therefore, Castaneda's 30–40 KG estimate is not credible.

For the purpose of sentencing, drug quantity may be calculated by crediting a witness's estimate. *United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008). "[A]lthough evidence of drug quantity must be more than speculative[,] the sentencing guidelines permit *some* amount of reasoned 'speculation and reasonable estimation' by a sentencing court." *United States v.*

12

*Seymour*, 519 F.3d 700, 710-11 (7th Cir. 2008) (citations omitted) (emphasis in original). Therefore, reasonable estimates may be used to establish drug quantity. *United States v. Acosta*, 534 F.3d 574, 582 (7th Cir. 2008). "[E]stimates of drug quantity are acceptable if they are based on evidence possessing a sufficient indicia of reliability and not nebulous eyeballing." *United States v. Durham*, 211 F.3d 437, 444 (7th Cir. 2000). Drug quantity attributable to a defendant must be determined by a preponderance of the evidence. *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012).

The Court finds that, based on a preponderance of the evidence, there is sufficient indicia of reliability to credit Castaneda's estimate of between 30 to 40 kilograms of cocaine sold to the Defendant. Castaneda testified at trial to over 50 meetings over the course of a few years. The Defendant asserts that only 8 of these meetings involved the transfer of drugs, but the record also reflects many occasions where money was exchanged. Even if no drugs were exchanged during these meetings, they still were a crucial part of the drug trafficking scheme between the Defendant and Castaneda; without payment Castaneda would not continue providing the drugs the Defendant requested. That Castaneda had difficulty remembering exact dates and meetings does not by itself destroy his credibility; the record shows numerous meetings over a period of years in multiple locations, which would make it difficult to remember exact details of each meeting. The telephones that the Defendant used to communicate with Castaneda , and the wiretaps connected with these phones, revealed a lengthy and ongoing relationship centered around drug trafficking. Finally, even if the Court were to find that only half of Silvestre's low end estimate was a reasonable estimate, such a quantity would continue to support the base offense level reported in the PSR.

Other items discovered in the Defendant's home further corroborate Castaneda's statements about the nature and scale of their drug enterprise, including a drug ledger, scales, cutting agents, packaging with cocaine residue, and nearly $22,000 in cash, most of which was found in a safe hidden in a dishwasher. In particular, Castaneda described his use of metal cans to distribute kilograms of cocaine and the search of the Defendant's home revealed such a can containing a cocaine cutting agent and marijuana, which was the most recent drug the Defendant purchased from Casteneda. Castaneda's testimony was further corroborated by other evidence in the record, including the locations (both Castaneda's and the Defendant's residences) of meetings and the nature of those transactions as described by Castaneda and confirmed by the intercepted telephone conversations between Castaneda and the Defendant. The Defendant's residence contained multiple items demonstrative of drug dealing in larger quantities, including the amount of marijuana seized, the packaging with cocaine reside, the presence of cocaine cutting agents, and large amounts of cash, all of which is consistent with Castaneda's testimony.

The corroborating evidence show that Castaneda's estimate of drug quantity is more than nebulous eyeballing. Therefore, the Court finds that the PSR's assessment of at least 15 KG but less than 50 KG of cocaine to be reasonable. Based on these amounts, the Court finds that the base offense level of 34 for Count 2 pursuant to the Drug Quantity Table under U.S.S.G. §2D1.1(c)(3) is accurate, and the Defendant's objection is overruled.

## CONCLUSION

For the foregoing reasons, the Defendant's objections to the PSR are OVERRULED. A telephone conference to schedule a sentencing hearing date is SCHEDULED for December 11, 2013, at 11:00 AM before Judge Theresa L. Springmann. The Court will initiate the call.

SO ORDERED on December 3, 2013.

                                                         s/ Theresa L. Springmann
                                                      THERESA L. SPRINGMANN
                                                      UNITED STATES DISTRICT COURT