UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:11-CR-35 |
| | ) | |
| BOOKER T. SEWELL | ) | |

**OPINION AND ORDER**

This matter is before the Court after the Defendant, Booker T. Sewell, filed a Motion to Appeal [ECF No. 167]. On February 4, 2016, the Defendant filed this motion with the United States Court of Appeals for the Seventh Circuit. Subsequently, the Court of Appeals forwarded the motion to the clerk for this Court, which was received on February 10, 2016 and docketed as being filed on February 4, 2016. The Court of Appeals also issued an Order [ECF No. 165] that construed the Defendant's Motion to Appeal as an attempt to file a notice of appeal.[1] Based on this, the Court of Appeals directed this Court to consider whether the Defendant timely filed his notice of appeal, "whether an extension of time is warranted under Federal Rule of Appellate Procedure 4(b)(4), and any other appropriate issues." (Order of USCA 1, ECF No. 165.) For the reasons discussed below, the Defendant's notice of appeal is untimely, but an extension of the time to file is warranted.

---

[1] On February 4, 2016, the Defendant also filed a Motion to Recuse Judge [ECF No. 164]. The Order [ECF No. 165] construed that motion as a petition for a writ of mandamus and denied it as such. This Court has only been ordered to address the Defendant's Motion to Appeal.

1

## BACKGROUND

### A. Sewell's Sentencing

The Defendant was originally sentenced on February 10, 2014 and an amended judgment was entered on February 11, 2014 [ECF Nos. 113, 115]. On February 19, 2014, the Defendant, by his court-appointed counsel, Stanley L. Campbell, filed his Notice of Appeal [ECF No. 116]. On April 6, 2015, the Court of Appeals affirmed the district court on the four issues raised on appeal, but vacated "each of Sewell's conditions of supervised release" and affirmed the sentence "in every other respect." (Op./Order 4, 25–26, ECF No. 134.) On remand, this Court scheduled the Defendant for resentencing to impose new conditions of supervised release in light of *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014) and *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015).

### B. Sewell's Anticipated Motion under 28 U.S.C. § 2255

Once this Court received the mandate from the Court of Appeals, it held several conferences with the Government and Defendant's counsel, Stanley L. Campbell, to determine how to best proceed to resentencing. (Telephone Status Conference, ECF Nos. 137–38, 142, 144.) Ultimately, the Court issued an order that advised "the parties to review the recent decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Price v. United States*, [795 F.3d 731] (7th Cir. 2015), and to consider how those decisions affect the re-sentencing issue in this case." (Order 1, Aug. 7, 2015, ECF No. 145.)

On August 25, 2015, in preparation for filing a § 2255 motion following the Defendant's resentencing, Attorney Thomas N. O'Malley entered his appearance in the case for Sewell [ECF

No. 146].² On October 22, 2015, the Defendant appeared in court with his attorney, Campbell, for an in-person status conference to discuss sentencing issues. On behalf of the Government, Assistant United States Attorney Anthony Geller informed the Court that he and Campbell met and agreed that *Johnson* would apply to Sewell's situation. However, given that Sewell's sentence was not vacated on appeal, he asked for more time to conduct research to determine the procedural path.³ Campbell agreed with the Government's summary of the issues and requested a preliminary presentence report. The Court ordered the United States Probation Office to prepare a preliminary presentence report and set the next status conference [ECF No. 148].

During a telephonic status conference [ECF No. 152] on December 8, 2015, the Court again discussed the relevance of *Johnson* to the Defendant's resentencing. The Government informed the Court that it believed that because the Court of Appeals only vacated the conditions of supervised release, the Court could not alter the Defendant's sentence to account for *Johnson*. The Government stated that, in its view, the Defendant would need to present his *Johnson* issue in a § 2255 motion after being resentenced with new conditions of supervised release. Campbell agreed with the Government that a § 2255 motion was the procedural mechanism to resolve his client's *Johnson* issue. Further, Campbell informed the Court that he "talked to Mr. O'Malley about [the § 2255 motion]; my understanding that the Community Defender's office is handling

---

² Although the filing that gave notice of O'Malley's appearance did not explain his purpose, O'Malley's Notice to the Court and Motion to Withdraw [ECF No. 166], dated February 11, 2016, provides further detail. The Notice states that O'Malley entered his appearance pursuant to Northern District of Indiana General Order 2015-5, which was issued on August 7, 2015. General Order 2015-5 appointed the Federal Community Defender's Office for the Northern District of Indiana "to represent any defendant who was previously determined to have been entitled to appointment of counsel or who is now indigent, to determine whether that defendant may qualify for federal habeas relief under either 28 U.S.C. § 2255 or 28 U.S.C. § 2241 in light of *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015)." In the Notice, O'Malley states that he entered his appearance solely to represent Sewell regarding his *Johnson* issue, not to serve as appellate counsel.
³ Geller also stated that the parties disagreed about whether "pointing the firearm" constituted a crime of violence and the guideline calculation based on drug quantity and the firearm.

3

the 2255, so I've already talked to him about Mr. Sewell. . . . [A]nd there are some issues beyond *Johnson* that Mr. Sewell may want to raise as part of a 2255, so . . . . I guess I have to agree with [the Government] that that seems to be what needs to be done." At this time, Campbell also stated that he reviewed the proposed conditions of supervised release presented in the Revised Preliminary Presentence Investigation Report [ECF No. 150] with Sewell, and Sewell had no objections to the conditions.

C.    **Sewell's Resentencing**

On January 12, 2016, the Defendant appeared in court for resentencing. At the outset of the proceeding, the Court informed the Defendant that "[t]his matter is scheduled today for resentencing with exclusive regard as to conditions of supervision as part of the sentence." (Resentencing Hr'g Tr. 2:8–10, Jan. 12, 2016.) When the Court inquired whether there were any objections to the amended presentence report and its addendum, both prepared on December 30, 2015, the Defendant stated, "[y]eah, I don't stand by number 4 anymore." (Hr'g Tr. 5:9–10.) Campbell interposed that

> I think what he's referencing is I had indicated that because the maximum term imprisonment for Count 2 is 20 years, Sewell maintains that his sentence should be 20 years based upon a guideline calculation in the *Johnson* case. And then that goes along with the contention that he's not an armed career criminal, based on the *Johnson* case.

(Hr'g Tr. 5:19–25 (italics added).)  The Defendant further elaborated that

> And so what I would be basically getting at is that in light of United States versus Johnson, Mrs. Springmann, I'm no longer an armed career criminal, okay? And that put me in the position of 15 to life, okay?
>
> Now that I'm a 922(g) and 856, have I not been a career, I would have taken a plea, Ms. Springmann. But I cannot enter into an agreement, because the Government was not willing to drop the armed career criminal act.

4

> And so being that now the armed career criminal act in my situation is unconstitutional and my Fifth Amendment had been violated, that started at the beginning of the indictment.
>
> And I would like to say that the poisonous tree doctrine by [*Wong Sun*] would attack the Count 2, because it started in the beginning of violating the due process of my situation, and I would have taken a plea.
>
> Had given a plea indicted today [sic] for a 922 and 856, if I entered into an agreement with the Government today, Count 2 possibly would have been dismissed because it was a hundred grams of marijuana and I would have pleaded guilty to the 922. But in the beginning I accept responsibility. I did have a hundred grams of marijuana in the residence that day on April the 11th. I told the police officers when I was arrested, that the marijuana was mine, so I admitted that off the barrel, Ms. Springmann.
>
> [ . . . ]
>
> So I'm saying that if the armed career criminal act and the 5th Amendment they say was violated in the Johnson case stopped the due process in that because it would have never ended that with a 20 year sentence, because I was only facing 0 to 10 in the instant offense and not 15 to life.

(Hr'g Tr. 6:1–24, 7: 1–6.)

In response to the Defendant's explanation of his objection, the Court stated:

> Okay. All right. What you've said has been noted into the record and I understand there are some issues with regard to your case that still remain viable, but it's important to point out at this point that today the Court is simply going to address the issue that was mandated from the Court of Appeals, and that is with regard to the conditions of your supervised release, that those have to be adjusted for the case law over the last two years that has been issued by the Court of Appeals; that is, case law that came up since the time you were originally sentenced.

(Hr'g Tr. 7:7–16.) After receiving the Defendant's confirmation, the Court continued to explain

> And so the Court of Appeals did not vacate any other part of your sentence or your conviction.
>
> To the extent there are other issues, as you just spoke of, and it's the Court's belief, and again, let me confirm with counsel that those matters may be addressed in separate proceedings for determination. And let me just, not to misstate it and to make sure that you're not waiving anything that you've raised

5

right now, Mr. Sewell, let me ask you, Mr. Campbell, anything to follow up with regard to your client's comments, anything else?

(Hr'g Tr. 7:18–8:2.) Campbell confirmed that the Court accurately summarized the situation and stated that "Mr. Sewell and I have had conversations about this," where Campbell has explained to Sewell that his issues are "part of a . . . subsequent proceeding" and "the *Johnson* case issue will be raised, as well as he will have an opportunity to raise the things—the issues that he's talked about here today." (Hr'g Tr. 8:3–11 (italics added).)

Having clarified this issue based on the Defendant's statements in court, the resentencing continued. The Court did not address the guideline calculation that appeared in the amended presentence report because of the limited scope on remand. However, the Court summarized the Government's statement contained in the addendum to the amended presentence report that "the guideline calculation is not correct under current law, especially in light of *Johnson* . . . but Mr. Sewell is not presently entitled to a re-calculation of the guideline range; that's the Government's contention." Similarly, the Court noted that the Defendant "had no objections to the amended presentence report's proposed conditions of supervised release"[4] (Hr'g Tr. 9:7–8), and the objections related to the other sentencing issues "are agreed to be preserved on the record for any additional proceedings pertaining to Mr. Sewell's case where they would be better addressed procedurally." (Hr'g Tr. 9:14–16.)

---

[4] Later in the resentencing, the Defendant objected that the DNA sample mentioned in the conditions of supervised release had already been collected, as well as that the $200 special assessment had already been paid. The Court altered the language for the DNA sample condition by adding clarifying language (Hr'g Tr. 11:16–12:4, 15:8–12; Am. J. ¶ 6, at 3, ECF No. 161.) The Court also accommodated the Defendant's request for the special assessment (Hr'g Tr. 11:7–11; Am. J. 4), but the Court had already included language to ensure that the Defendant would not pay the special assessment a second time. (Notice of Court's Proposed Revised Conditions of Supervised Release 6, ECF No. 158; Hr'g Tr. 17:22–23.)

At the conclusion of the hearing, the Court informed the Defendant of his appellate rights and stated that "[w]ith few exceptions, any Notice of Appeal must be filed within 14 days of judgment being entered in your case." (Hr'g Tr. 18:11–23.) When the Court asked the Defendant if he understood these rights, the Defendant responded, "[y]es, ma'am, I would like to appeal." (Hr'g Tr. 18:24.) The Court then reminded Campbell of his "duty to perfect a timely appeal, should [Sewell] wish to do so." (Hr'g Tr. 18:25–19:2.) Shortly after, the Court ended the hearing. On January 12, 2016, the Court entered an amended judgment that reflected the new conditions of supervised release.

On January 20, 2016, Campbell moved to withdraw and informed the Court that "[b]ased upon [*Johnson*], Defendant believes he is entitled to a reduction of his sentence since he is no longer an armed career criminal." (Mot. Withdraw Appearance 1, ECF No. 162.) Campbell further stated that a reduction in sentence would be accomplished through a § 2255 motion, the Federal Community Defender's Office is handling that motion, and his withdrawal would allow "the Community Defender's Office [to] begin representation of the Defendant and file the necessary petition under 28 U.S.C. § 2255." (Mot. Withdraw Appearance 1–2.) On this basis, as well as observing that O'Malley was still listed on the docket as representing Sewell, the Court granted Campbell's motion on January 21, 2016. On February 4, 2016, Sewell filed a notice of appeal.

**ANALYSIS**

The Court of Appeals has directed this Court to consider: (1) whether Sewell's Motion to Appeal, which has been construed as a notice of appeal, is timely; (2) whether an extension of time is warranted; and (3) any other appropriate issues. The notice of appeal states that on

January 12, 2016, Sewell requested to have the transcript prepared to file his appeal, both Campbell and the Court were informed that the Defendant wanted to appeal, and the Court violated his Sixth Amendment right to counsel by permitting Campbell to withdraw. Sewell's notice concludes by asserting that "[b]ased upon [*Johnson*], Defendant believes that he is entitled to a new trial base [sic] on the fact that [his] Indictment . . . is unconstitutional and it violates his Fifth Amendment due process and XIV Amendment due process and equal protection of the law." (Notice of Appeal 2, ECF No. 167) (minor alterations from original).)

A defendant in a criminal case must file his notice of appeal in the district court within 14 days after "the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A). This Court entered its amended judgment on January 12, 2016, which meant that the notice of appeal had to be filed by January 26, 2016, in order to be timely. Fed. R. App. P. 4(b)(1), 26(a)(1). Sewell missed this deadline because the Court of Appeals received the notice of appeal on February 4, 2016. *Id.* 4(d). Further, Sewell did not give any indication that he used the internal mail system of the institution in which he was confined. *Id.* (4)(c). Therefore, February 4, 2016, is the earliest date this Court may consider Sewell's notice of appeal as "filed."[5]

Although Sewell's notice of appeal does not present enough information to warrant extending the time to file a notice of appeal, his statement at resentencing does. This Court has broad powers under Federal Rule of Appellate Procedure 4 to grant extensions of time. *United States v. Alvarez-Martinez*, 286 F.3d 470, 473 (7th Cir. 2002). That rule provides that

---

[5] The Court notes that the top right corner of Defendant's notice of appeal appears to bear the handwritten text, "Filed 2/1/16." However, the stamp created by the electronic docketing system obscures this handwritten text. The notice of appeal is otherwise undated and its last page states that it was "hand delivered" to the court clerk. Also, Sewell's "Motion to Recuse Judge" [ECF 164] states that it was "hand delivered to the clerk of the court for copying to disperse to" Geller and Campbell on January 11, 2016 (i.e., the day before resentencing).

> Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

Fed. R. App. P. 4(b)(4).

"Good cause" may exist when a § 2255 motion alleging ineffective assistance of counsel has a sufficiently high likelihood of success. *Alvarez-Martinez*, 286 F.3d at 473 (acknowledging that inadvertence or miscalculation by counsel are not sufficient reasons to extend time). If a defendant makes a request in open court, or to counsel within the required period, the lawyer's failure to ensure that the clerk followed through by docketing the notice of appeal may support a claim that the defendant's Sixth Amendment right to counsel has been violated. *United States v. Hirsch*, 207 F.3d 928, 930–31 (7th Cir. 2000). That is because these scenarios indicate a more serious communication problem between the lawyer and his client. *Alvarez-Martinez*, 286 F.3d at 473. Strict enforcement of the Rules of Appellate Procedure means that the defendant's usual remedy is to file a § 2255 motion; and if the district court finds a sixth amendment violation, "then the court must vacate the judgment and reimpose the sentence to permit an appeal." *Hirsch*, 207 F.3d at 930–31. However, a court may choose to avoid a § 2255 motion's "time-consuming ancillary proceeding[s]" by reasonably concluding "that good cause had also been shown to extend the time for filing a notice of appeal in the ordinary course." *Alvarez-Martinez*, 286 F.3d at 473.

As discussed above, this case's unique procedural posture on remand presented novel questions. During the months leading up to the resentencing, and at the resentencing itself, the Government, Campbell, and the Court addressed the Defendant's *Johnson* issues by stating that a § 2255 motion was the proper method to seek that relief. Despite this, when advised of his appellate rights at resentencing, Sewell stated "[y]es, ma'am, I would like to appeal." (Hr'g Tr.

9

18:24.) The record is unclear concerning what communications transpired between Sewell and Campbell after the resentencing, including whether Sewell retracted his in-court statement and decided to proceed on his *Johnson* issue. *See Hirsch*, 207 F.3d at 931 ("[I]f there was no request within [14] days in or out of court, then [the defendant] cannot change his mind and later blame his lawyer."). This route would have been logical because Sewell repeatedly voiced his concerns with *Johnson* and did not object to his new conditions of supervised release—the only issue before this Court on remand. Therefore, Campbell's motion to withdraw, which was consistent with the statements made on the record at resentencing and accounted for the procedural posture going forward with *Johnson* and other issues, was granted.

Contrary to this, Sewell's notice of appeal suggests that he stood firm by his statement made in open court that he wanted to appeal, Campbell ignored his request, and Sewell was deprived of his right to file an appeal because a notice was not filed by January 26, 2016. This scenario presents good cause to extend the time to file the notice of appeal. *Alvarez-Martinez*, 286 F.3d at 473 ("By granting an extension here, the district court allowed counsel to mend a potentially disastrous lapse in representation."). The Government would suffer no prejudice by allowing the extension, and allowing Sewell's appeal would expedite the resolution of his *Johnson* issue because it would save Sewell from having to file a § 2255 motion alleging a sixth amendment violation caused by not filing a timely notice of appeal. Accordingly, the Court extends the time to file a notice of appeal until February 25, 2016. Fed. R. App. P. 4(b)(4), 26(a).

## CONCLUSION

For the foregoing reasons, the Court DENIES the Notice of Appeal [ECF No. 167] as untimely, but EXTENDS the time to file a notice of appeal until February 25, 2016. Pursuant to

Federal Rule of Criminal Procedure 32(j)(2), the Court DIRECTS the clerk to REFILE the Defendant's Notice of Appeal [ECF No. 167] as a new docket entry bearing the date this Opinion and Order was issued. Alternatively, given the unusual circumstances presented due to this case's procedural posture, as well as the fact that the deadline to refile is February 25, 2016, and delays with turnaround, receipt, and the ability to file caused by the Defendant's incarceration, the Court DIRECTS the clerk, on the Defendant's behalf, to REFILE the Defendant's Notice of Appeal [ECF No. 167] as a new docket entry bearing the date this Opinion and Order was issued. The Court also DIRECTS that the clerk make service of this Opinion and Order to Mr. Sewell, Mr. Geller, Mr. O'Malley, and Mr. Campbell (courtesy copy).

ORDERED on February 22, 2016.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT